

**NORTHERN DISTRICT OF TEXAS**
**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the order of the Court.**

Signed October 19, 2005          **United States Bankruptcy Judge**

---

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| IN RE: § § **PREMIERE NETWORK SERVICES, INC.** § § § Debtor. § | Case No. 04-33402-HDH-11 (Chapter 11) |
| **PREMIERE NETWORK SERVICES, INC.** and **UTEX COMMUNICATIONS CORP.**, § § § § Plaintiff, § v. § § **SOUTHWESTERN BELL TELEPHONE L.P. d/b/a SBC TEXAS,** § § § Defendant. § | Adversary No. 04-03687 |

## MEMORANDUM OPINION ON MOTIONS TO DISMISS

Came before the Court for consideration, Southwestern Bell Telephone's motions to

dismiss the complaint of Premiere Network Services and UTEX Communication Corp. for

tortious interference ("Motion"), asserting that this Court lacks subject matter jurisdiction due to

the exclusive jurisdiction of the Texas Public Utility Commission ("TPUC"). The underlying contract is a post-petition agreement between Premiere and UTEX that was approved by this Court.

## I. BACKGROUND FACTS

Prior to the filing of debtor's petition, Premiere Network Services ("Premiere") and Southwestern Bell Telephone ("SBC") had an interconnection agreement ("ICA or "T2A") that allowed Premiere to lease wholesale telecommunications services that it used to serve its retail customers. On June 10, 2004, Premiere filed its Motion for Entry of an Order Pursuant to 11 U.S.C. § 363(b) of the Bankruptcy Code Approving the Debtor's Performance of Obligations Under a Master Services Agreement ("MSA"). On August 6, 2004, over SBC's objection, and after a contested hearing on July 27, 2004 and August 4, 2004, the Court approved the order. Under the MSA, UTEX provides wholesale telecommunications network elements to the Debtor to replace those wholesale network elements that were being provided by SBC. SBC is not a party to the MSA.

On December 17, 2004, Premiere and UTEX filed their Complaint. The dispute presented by the Complaint centers on the allegation that SBC wrongfully failed to "turn up" interconnection trunks between SBC and UTEX's switch on December 17, 2004, and thereafter.

SBC replies that it did not turn up the connection because UTEX had failed to obtain written approvals from all seventeen Public Safety Answering Points ("PSAP") in the Dallas rate center, as SBC's policy requires. PSAPs are the governmental entities to which 911 emergency telephone calls are routed. SBC's policy is based upon its understanding of the ICA, Attachment 15 to the ICA and Federal and State regulations and rules.

Whether SBC could enforce such a policy of refusing interconnection was submitted to the Texas Public Utility Commission ("TPUC). After the parties submitted their first briefs in support, the TPUC arbitrated the issue and found SBC could not turn down connections due to UTEX's alleged failure:

> The Arbitrators find that SBC Texas cannot "turn down" SS7 Interconnection Trunks due to UTEX's failure to satisfy its purported 911-related obligations… The Arbitrators are sympathetic to SBC Texas' concerns of potentially being held liable or 911 calls originated from a CLEC end user that are not terminated properly because the CLEC failed to satisfy its 911 obligations. However, the Arbitrators find that there are no specific provisions in the ICA or the law that require UTEX to demonstrate that it has implemented 911 capabilities before the interconnection trunks can be used to provide services that do not require the transmission of 911 calls.

PUC Docket No. 29944, p.32. This decision was entered March 24, 2005.

## II. ANALYSIS

### A. The TPUC's Exclusive Jurisdiction To Interpret And Enforce Interconnection Agreements Does Not Strip This Court Of Jurisdiction Over This Tortious Interference Claim.

The decision in PUC Docket No. 29944 resolves any dispute that would require interpretation of laws or contracts governing the regulated parties. All that remains is a state claim of tortious interference that no longer requires specialized knowledge, eliminating any need for the exclusive jurisdiction of the TPUC, if such exists, or deferral to the TPUC by this Court under the primary jurisdiction doctrine.

#### 1. Exclusive jurisdiction does not exist over the present action that does not rely on agency law or agency-governed contract.

SBC requests dismissal of Premiere's wrongful interference claim for lack of subject matter jurisdiction due to the exclusive jurisdiction of the TPUC. SBC makes this claim in reliance on a decision based on an earlier dispute between the two parties, *Premiere Network Services, Inc. v. SBC Communications, Inc.*, Case No. C-03-418, United States District Court,

Southern District of Texas, Corpus Christi Division (Aug. 23, 2004) (Jack, J.). "Premiere sues for the breach of the T2A interconnection agreement which is obviously subject to the TPUC's exclusive primary jurisdiction." *Id*. at 9. Judge Jack later emphasizes the T2A contract as the basis for its decision when he goes on to say that, "because all of Premiere's federal claims require an interpretation of the interconnection agreement, those claims must first be presented to the TPUC." *Id.* at 11.

Plaintiffs respond with *Mirant Corp. v. Potomac Elec. Power Co.*, 378 F.3d 511 (5th Cir. 2004), and its decision to allow a debtor reject a regulated contract for energy rates that had risen above market. Such rates are within the exclusive jurisdiction of the Federal Energy Regulatory Commission.

SBC argues that *Mirant* is not applicable because Congress did not grant the FERC exclusive jurisdiction over electricity contracts, only rates. This distinction is a stretch. "The [Federal Power Act ("FPA")] vests in FERC the exclusive authority to pass upon the reasonableness of the structure, terms and conditions pertaining to the sale and distribution of wholesale electric rates." *NRG Power Mktg., Inc. v. Blumenthal*, 2003 WL 21507685, at *3 (S.D.N.Y. June 30, 2003) (quoting 16 U.S.C. § 824). The terms and conditions of the sale of rates is a contract. The FERC's exclusive jurisdiction over energy rates encompasses exclusive jurisdiction of the regulated contract. This Court cannot agree with SBC's distinction.

The distinction between *Premiere* and *Mirant*, is that *Mirant* deals specifically with the bankruptcy jurisdiction as opposed to general federal jurisdiction. As discussed below, a federal court will have the jurisdiction to hear certain matters related to a bankruptcy proceeding that it might not have otherwise. *Mirant* stands for the proposition that in matters related to a bankruptcy, the ordinarily exclusive jurisdiction of a regulatory agency might be overcome.

However, *Mirant* does not entirely resolve the issue at hand. The *Mirant* court's power to reject the regulatory contract was not based on the general provision of bankruptcy court jurisdiction. The court's power in that case came from an explicit provision of the Bankruptcy Code, 11 U.S.C. § 365(a), that the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor. This is, according to *Mirant*, notwithstanding the exclusive jurisdiction of another court to approve or reject such a contract.

In the case at hand, Plaintiffs' claim is not based upon the regulated ICA that originally existed between SBC and the Debtor. That contract was cancelled under 11 U.S.C. § 365(a) in favor of the post-petition MSA contract between Premiere and UTEX. The claim is instead predicated on SBC's interference of the MSA between UTEX and Premiere, approved by this Court, and the contract between Premiere and Southern Methodist University.

SBC goes on to argue that the central dispute here is the 911-approval issue under the SBC-UTEX T2A. SBC defends not turning up the interconnection because of regulatory law and the terms of its own T2A contract with UTEX, both of which SBC interprets to "require" written approval by each PSAP. Thus, because either of these defenses would require interpretation of the ICA and/or the relevant law, TPUC would have exclusive jurisdiction over the present issue. However, the TPUC recently addressed the *identical* (SBC's characterization) issue in PUC Docket No. 29944. In response to whether SBC Texas is authorized to "turn down" SS7 Interconnection Trunks until UTEX establishes all functionality, the TPUC Arbitrators found that "there are no specific provisions in the ICA or the law that require UTEX to demonstrate that is has implemented 911 capabilities before the interconnection trunks can be used to provide services that do not require the transmission of 911 calls."

This finding by the TPUC resolves the interpretation issue, releasing this Court from the need to interpret "some issue within the special competence of an administrative agency" as SBC alleges before resolving the main issue brought by Premiere. *Id.* at 13 (citing *Reiter v. Cooper*, 507 U.S. 258, 268 (1993)). Relying on TPUC's finding would not create inconsistent results. For the above reasons, Plaintiffs' claim of tortious interference cannot be dismissed for lack of subject matter jurisdiction by this Court due to the exclusive jurisdiction of the TPUC.

> **2. Primary jurisdiction doctrine is not necessary where the benefit of referral to an agency does not outweigh the need for expeditious resolution.**

SBC alternatively invokes the doctrine of primary jurisdiction.

"Primary jurisdiction applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires resolution of issues which, under a regulatory scheme, have been placed within special competence of an administrative body, in which case the judicial process is suspended pending referral of such issues to the administrative body for its views."

*U.S. v. Western Pac. R. Co.*, 352 U.S. 59, 63-64 (1956) (citing *General American Tank Car Corp. v. El Dorado Terminal Co.*, 308 U.S. 422, 433 (1940)). SBC relies on *In re Magnesium Corp. of America*, 278 B.R. 698 (Bankr. S.D.N.Y. 2002), to provide a test comprised of four factors on whether to apply the primary jurisdiction doctrine:

> (1) the question at issue is within the conventional experience of judges;
> (2) the issue lies in the agency's discretion or is within the agency's particular expertise;
> (3) there exists a danger of inconsistent rulings; and
> (4) a prior application to the agency has been made.

*Id.* at 707. The court found that the primary jurisdiction doctrine did not apply where there was no "need to engage in fact-finding turning on technical evidence, use of agency expertise, exploitation of localized knowledge, or solicitation of public comment." *Id.* As mentioned in the discussion on exclusive jurisdiction, the TPUC has resolved the issue of SBC's authority under contract and law to withhold interconnection based on a CLEC's failure to prove 911 capability.

The Arbitrators found that SBC did not have such authority. There is no longer an issue requiring the agency's expertise, making referral under primary jurisdiction doctrine unnecessary. The issuance of the TPUC's resolution on 911 capability also eliminates the danger of inconsistent rulings.

Even if primary jurisdiction doctrine was appropriate under the *Magnesium* decision, *Gulf States Utils. Co. v. Ala. Power Co.*, 824 F.2d 1465 (5th Cir. 1987), is the controlling opinion for whether to apply the primary jurisdiction doctrine. Primary jurisdiction applies even where an agency does not have exclusive jurisdiction. It is not a doctrine that denies a federal court of jurisdiction, but only applies when "a court must stay its own proceeding and defer to let an agency 'have the first word.' The doctrine applies when agency action would produce needed uniformity in an area or when the agency has 'special competence' over the issue to be decided." *Id.* at 1472-73 (citing *Western Pac. R. Co.*, at 64, 77). It is a discretionary doctrine. "A district court in its discretion should invoke primary jurisdiction and defer only if the benefits of obtaining the agency's aid outweigh the need to resolve the litigation expeditiously." *Id*. *Gulf States* offers its own factors for a court to consider in striking this balance, including:

> (1) how agency action will aid the litigation;
> (2) whether the litigation involves conduct requiring continuing supervision by the agency;
> (3) whether the issues to be litigated are unique to regulated industries;
> (4) and whether proceedings already are pending before the agency.

824 F.2d at 1473 (citing *Mississippi Power & Light Co. v. United Gas Pipeline Co.*, 532 F.2d 412, 419-20 (5th Cir.1977), cert. denied, 429 U.S. 1094 (1977)). TPUC's aid in this litigation is undeniable. See *Express Telephone Services, Inc. v. Southwestern Bell Telephone Company*, L.P., Case No. 3:02-CV-1082-M, United States District Court, Northern District of Texas, Dallas Division (Oct. 16, 2002) (dismissing complaint because interpretation of interconnection

agreement had not yet been resolved by TPUC, hence the matter was not ripe). However, the issue has been aided by the TPUC's recent finding, eliminating SBC's legal and contractual defense. Furthermore, the resolution of Plaintiffs' tortious interference claim neither requires supervision by the agency nor is it unique to the regulated industry. Under the guidance provided by *Gulf State*, referral of this case to the TPUC under the primary jurisdiction doctrine is unwarranted. The TPUC has already aided in this litigation to the full extent of its expertise, resolving any relevant technical issue.

SBC argues that the TPUC's resolution is over a different question. It further suggests that despite TPUC's decision, other issues remain such as SBC's legal rights, SBC's good faith, and numerous ICA provisions yet to be interpreted. This Court cannot see what other legal rights SBC might have with respect to this claim outside of those resolved by the TPUC. SBC did not have the right to "turn down" interconnection under the T2A or regulatory law. There is nothing about good faith that would lend itself to the TPUC's special interpretation. Good faith is not an issue that should be deferred under the primary jurisdiction doctrine. Finally, as to SBC's claims to the numerous provisions, SBC cites these in one of its briefs to the Court. These are mentioned in the TPUC Award. Review of the Award shows that these have already been considered in the TPUC's final decision as to SBC's lack of authority to refuse interconnection.

  **B. Subject Matter Jurisdiction Exists Over This Proceeding Under Section 1334 Because It Is Either Core Or "Related To" The Bankruptcy.**

SBC next argues that the Court should abstain under 28 U.S.C. § 1334. Section 1334 addresses the jurisdiction of a federal court in bankruptcy cases and proceedings. *Matter of Wood*, 825 F.2d 90 (5th Cir. 1987), identified four types of matters over which a federal court has jurisdiction. Under section 1334(a), the federal courts have original and exclusive jurisdiction

over all cases under title 11. 28 U.S.C. § 1334(a). Under section 1334(b), federal courts shall have original, but not exclusive, jurisdiction of all civil proceedings (1) arising under title 11, or (2) arising in or (3) related to cases under title 11. 28 U.S.C. § 1334(b). Section 1334(a) refers to the bankruptcy petition itself. 825 F.2d at 92. The matters under section 1334(b) "are not meant to distinguish, but to identify collectively a broad range of matters subject to the bankruptcy jurisdiction of federal courts." *Id*. at 92 (citing S. Rep. No. 989, 95th Cong., 2d Sess., 153-54 (1978)). In order for subject matter jurisdiction to exist, the matter need only be "related to" the bankruptcy proceeding. *Id*. at 93. The test for whether a court is allowed to exercise jurisdiction under section 1334 is "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Id*. (citing *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)).

*Wood* supports its decision with a discussion of the constitutional issue of *Northern Pipeline Constr. Co. v. Marathon Pipeline Co.*, 458 U.S. 50 (1982). *Marathon* challenged section 1471(c) of the Bankruptcy Act of 1978, the predecessor to § 1334(c) of the Bankruptcy Act of 1984. 825 F.2d at 93. "In response to *Marathon*, Congress altered the placement of bankruptcy jurisdiction by creating a statutory distinction between core and non-core proceedings and restricting the power of bankruptcy courts to adjudicate the latter." *Id*. In short, once a bankruptcy court has subject matter jurisdiction, it can hear the matter if it is a core proceeding to the bankruptcy. 28 U.S.C. § 157(b)(1). If the matter is not a core proceeding, the court may, subject to the restrictions of section 1334, hear the proceeding but may only make recommended findings of fact and conclusions of law which are subject to *de novo* review in the district court. 825 F.2d at 95.

Applying *Wood* to the case at hand, the complaint is sufficiently related to the pending bankruptcy to allow the Court to exercise jurisdiction under section 1334. SBC's alleged interference could (and may already) have had a conceivable effect on Premiere's failed reorganization. The underlying MSA between Premiere and UTEX was approved by this Court, creating a presumption of a benefit to the estate through the successful reorganization of Premiere. Although this suit may ultimately have no effect on the bankruptcy, it cannot be concluded, on the facts at hand, that it will have no conceivable effect, thus, subject matter jurisdiction is proper under the "related to" provision.

Section 1334 prefaces the broad "related to" jurisdiction with "Notwithstanding any act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts." Hence issues that raise only questions of state law and so cannot be heard under section 1332 or section 1331, can still be heard by a federal court if that state issue is related to bankruptcy. The propriety, however, of the bankruptcy court hearing such issues does not rest there.

Once subject matter jurisdiction exists over the proceeding, the court must determine whether abstention is proper. As mentioned above, section 1334(c) limits the placement of jurisdiction in the court based on whether a matter is a core proceeding to the bankruptcy. The essential issue in this motion to dismiss, therefore, is whether this action is a core or non-core proceeding.

1.  **Tortious Interference Of A Post-Petition Contract Is A Core Proceeding Where Its Resolution Is Inseparable From Administration Of The Estate.**

Section 157 does not define core proceedings, but does provide a non-exclusive list of proceedings considered to be core. 28 U.S.C. § 157(b)(2). Premiere asserts that this matter is a core proceeding under paragraphs (A), (N), and (O) of section 157(b)(2).[1]

---

[1] Section 157(b)(2) states in relevant part, "Core proceedings include, but are not limited to:

The Fifth Circuit, in *Wood*, noted the necessity of defining core proceedings narrowly so as to conform to the constitutional proscription of *Marathon* due to the broad wording of some of the provisions.[2] 825 F.2d at 95. A proceeding is a core proceeding if (1) it invokes a substantive right created by the federal bankruptcy law; or (2) the proceeding, by its nature, could arise only in the context of a bankruptcy. *Id*. at 97. Premiere's suit is not based on a substantive right created by the federal bankruptcy law. Tortious interference is a state created right. Moreover, this suit is not a proceeding that could arise only in the context of a bankruptcy. It is simply a state tort action that, had there been no bankruptcy, could have proceeded in state court, more specifically, in front of the TPUC.

Bearing this in mind, analysis of this Court's jurisdiction under subsections § 157(b)(2)(A), (N), and (O) suggests that only the second prong of the *Wood* test, whether the proceeding could arise only in the context of bankruptcy, will be relevant.

*Debtor's Claim Will Affect The Administration Of The Estate*

Section 157(b)(2)(A) refers to matters concerning the administration of the estate. The definition of estate will aid in determining whether Premiere's claim falls under this subsection. The estate is defined as all legal or equitable interests of the debtor in property as of the commencement of the case. 11 U.S.C. § 541(a)(1). The estate also includes any interest in property that the estate acquires after the commencement of the case. 11 U.S.C. § 541(a)(7).

---

(A) matters concerning the administration of the estate;
(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and
(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

28 U.S.C. § 157(b)(2).

[2] "We decline, however, to give such a broad reading to subsection 157(b)(2)(O); otherwise, the entire range of proceedings under [related to] bankruptcy jurisdiction would fall within the scope of core proceedings, a result contrary to the ostensible purpose of the 1984 Act." 825 F.2d at 95.

Here, the conduct giving rise to the claim occurred after the petition in bankruptcy, and therefore the cause of action would usually not be considered property of the estate. However, exceptions to this have arisen in cases of post-petition breach of a post-petition contract. *See All Trac Transp., Inc. v. Transp. Alliance Bank (In re All Trac Transp., Inc.)*, 306 B.R. 859, 870 (Bankr. N.D. Tex. 2004) (A claim for tortious interference with contracts during the administration of a Chapter 11 case constitutes a core matter) (citing *Southmark v. Coopers & Lybrand,* 163 F.3d 925, 930-31 (5th Cir.1999) (state law cause of action inseparable from bankruptcy administration becomes core matter)); *see also Bennett Three Leasing Serv., Inc. v. Consol. Med. Transp., Inc. (In re Consol. Med. Transp., Inc.)*, 300 B.R. 435, 44 (Bankr. N.D. Ill. 2003) ("Breach of contract actions arising out of a post-petition contract approved in bankruptcy are core matters that can be heard and decided by a bankruptcy judge pursuant to 28 U.S.C. § 157(b)(2)(A).").

The MSA, entered into post-petition between the Debtor and UTEX, was a bridge to allow the Debtor to operate post-petition until a plan of reorganization could be confirmed. SBC's alleged interference with the MSA could (and may already) have had a conceivable effect on Premiere's failed reorganization. The tortuous interference claim is inseparable from the administration of the bankruptcy case, and constitutes a core matter as stated in *All Trac*. 306 B.R. 870. Thus, Premiere's proceeding is core under § 157(b)(2)(A).

*Debtor's Claim Is Not An "Order Approving The Sale Of Property"*

Subsection 157(b)(2)(N) lists as a core proceeding an order approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate. The wording in this subsection, read literally, limits the bankruptcy court's orders to "approving" the "sale" of property. Both Premiere and UTEX have characterized the MSA contract as a "lease" in their briefs to the Court. Thus, this Court had

jurisdiction to issue the "order approving the use *or lease*" under § 157(b)(2)(M) when it approved the MSA. However, enforcing the approved lease against a non-party is outside the contemplation of § 157(b)(2)(N). Section 157(b)(2)(M) is no more helpful in establishing this matter as a core proceeding, its wording limits this Court's power to approving such uses. Similar to the preceding discussion in *Consol. Medical Transport*, the power of a bankruptcy court to include subsequent matters is limited by *Wood*. If "related to" were sufficient to establish that a proceeding is core, the Court would not have to engage in this discussion. Thus, Premiere's proceeding is not core under § 157(b)(2)(N).

*Debtor's Claim Is Not An "Adjustment Of The Debtor-Creditor Relationship"*

The broad wording of § 157(b)(2)(O) presents somewhat more of a challenge. Under § 157(b)(2)(O), core proceedings include other proceedings affecting the adjustment of debtor-creditor relationships. 28 U.S.C. § 157(b)(2)(O). The second prong of *Wood* limits a federal court's ability to rule on a proceeding based on whether the proceeding could arise only in bankruptcy. Otherwise, "any lawsuit that, if successful, could adjust the debtor-creditor relationship in any way would be a core bankruptcy proceeding." *In re Bass*, 171 F.3d 1016, 1025 (5th Cir. 1999) (Texas bankruptcy court lacked jurisdiction over suit to aid in the collection of agreed non-dischargeable judgment obtained by creditors in Utah bankruptcy proceedings to which the trustees of former debtor's spendthrift trust were not made parties).

Case law on what matters "affect the adjustment of the debtor-creditor relationship" would be instructive. Case law regarding tortious interference of post-petition contracts, however, is demonstrably absent. *In re Bass* says that a successful lawsuit on its own is not enough. 171 F.3d at 1025. *In re Craig's Stores of Texas, Inc.*, 266 F.3d 388 (5th Cir. 2001), further illustrates what adjustment the Code intends. In *Craig's Stores*, debtor-plaintiff had

entered into a post-petition contract with creditor-defendant. After confirmation the debtor sued the bank on state law claims. The dispute was based and raised in the context of the preexisting relationship. This is instructive as to how § 157(b)(2)(O) applies. The debtor-creditor adjustment referred to in § 157(b)(2)(O) is not intended to apply broadly but instead comes into effect when the proceeding is based on a previously existing obligation. SBC is not a party to the MSA, thus there is no previously existing obligation.

This is further illustrated by other cases from this district. In *In re Lorax Corp.*, 295 B.R. 83 (Bankr. N.D. Tex. 2003), a Chapter 11 trustee brought an adversary proceeding that debtor was not in default on a lease. This was found to be a core proceeding under § 157(b)(2)(O) because the suit "equates to a determination of the nature and extent of the estate." 295 B.R. at 91. The estate was entirely comprised of debtor's interest in that property. Persuaded by *Harco Energy*, the *Lorax* decision included as a core proceeding any logical step in the process of a core proceeding. 295 B.R. at 91 (citing *In re Harco Energy,* 270 B.R. 658, 663 (Bankr. N.D. Tex. 2001) ("the determination of the existence of an executory contract is a core matter over which this Court has jurisdiction to enter a final order."). Premiere's claim depends on the existence of the MSA approved by this Court, which was a core proceeding. The MSA's approval has been heard and ruled on without the necessity of Premiere's current claim. Premiere's current claim is not a logical step in the process of a core proceeding.

*Regal Row Fina, Inc., v. Washington Mutual Bank*, 2004 WL 2826817 (N.D. Tex., Dec. 9, 2004), drives home this inclusion of necessary issues by finding a core issue to be one inextricably intertwined with the bankruptcy proceeding. *Regal* found jurisdiction over a fraud claim arising over a pre-petition loan to purchase property. What makes these last two cases core proceedings is that they are based on and affected by the preexisting obligations of the

debtor-creditor relationship. The obligation in the MSA is between Premiere and UTEX. SBC's alleged interference does not adjust the relationship between Premiere and SBC under the MSA because SBC is not a party to the MSA and therefore has no obligation on which a claim could be based. Thus, Premiere's proceeding is not core under § 157(b)(2)(O).

        **2.    Assuming That This Proceeding Is Non-Core, Mandatory Abstention Is Not Required Where A Parallel Action Is Not Pending In Another Forum.**

Even assuming that this was a non-core, "related to" proceeding, mandatory abstention would not be required. Section 1334(c)(2) states:

> Upon timely motion of a party in a proceeding based upon State law claim or cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could be not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2).

From this statute, the Northern District of Texas has extracted six requirements that trigger mandatory abstention discussed in *Lorax*, 295 B.R. at 90. If the following are satisfied, this Court must abstain:

    (1) A party to the proceeding filed a timely motion to abstain;
    (2) The proceeding is based on a state law claim;
    (3) There is no basis for federal court jurisdiction other than section 1334;
    (4) The proceeding is a "related to," non-core proceeding;
    (5) An action is pending in state court; and
    (6) The state court action can be timely adjudicated.

*Id*. With respect to the first requirement, no accusation is made of failure to timely file a motion to abstain. SBC took a little over two months to make its motion to dismiss; however, this complaint was brought December 17, shortly before the holidays. The second requirement is also met. Tortious interference with a contract is based on a state law claim and necessarily raises issues of state law.

No assertion is made as to this Court's jurisdiction outside of section 1334. SBC and Premiere are citizens of Texas, eliminating diversity. No federal question is raised in this complaint. The third prong of the mandatory abstention test is satisfied.

Assuming that this is a non-core issue, the proceeding would be merely related to bankruptcy, satisfying the fourth requirement.

Requirements 5 and 6 are somewhat related in that they refer to a parallel proceeding. At the time of the parties' original briefs to the Court, the 911 capability issue was pending before the TPUC. At this time, the TPUC has reported a final decision on the issue. Plaintiffs report that no party has appealed or otherwise sough review of the TPUC's Award. Because there is no pending action, a determination as to the timeliness of adjudication cannot be effectively made.[3]

However, the Court finds that, because there is no pending proceeding in a state court, and because of the present posture of this case as an administratively insolvent Chapter 7, the matter cannot be timely adjudicated in state court.

### 3. Permissive Abstention Is Discretionary Where Reasons For Abstention Are Not Obvious.

The Court could still choose to abstain from hearing this proceeding under subsection 1334(c)(1).

> Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1). Again, *Lorax*, is instructive in listing the factors adopted by this District:

> (1) The effect or lack thereof on the efficient administration of the estate if a court recommends abstention;

---

[3] Factors to consider are: 1) backlog of the state court's calendar; 2) status of the bankruptcy proceeding; 3) complexity of issues; and 4) whether the state court proceeding would prolong the administration or liquidation of the estate. 295 B.R. at 93.

(2) The extent to which state law issues predominate over bankruptcy issues;
(3) The difficulty or unsettled nature of the applicable state law;
(4) The presence of a related proceeding commenced in state court or other nonbankruptcy court;
(5) The jurisdictional basis, if any, other than 28 U.S.C. 1334;
(6) The degree of relatedness or remoteness of the proceeding to the main bankruptcy case;
(7) The substance rather than form of an asserted "core" proceeding;
(8) The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;
(9) The burden on the bankruptcy court's docket;
(10) The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;
(11) The existence of a right to a jury trial;
(12) The presence in the proceeding of nondebtor parties;
(13) Comity; and
(14) The possibility of prejudice to other parties in the action.

295 B.R. at 95.

Factors 1 and 2 are in favor of abstention. The matter will not affect the estate as the claim is based on state law and arises from post-petition actions. Factor 5 also suggests that this matter might be better resolved in a state forum as this Court's sole jurisdiction comes from section 1334.

Factors 3 and 4 do not compel abstention. The claim is a simple tort matter that is well settled under Texas law.[4] Currently, this Court is the only forum in which such a proceeding is pending. Despite being a non-core proceeding, the degree of relatedness of the proceeding to the main bankruptcy case is apparent as it may affect the recovery by creditors of Premiere. Based on the fact that this issue arises from a post-petition contract this Court approved, and that all parties are parties to the bankruptcy, factors 6, 7, 8, 12 and 14 could be seen to weigh against abstention.

---

[4] The elements of tortious interference are (1) that a contract subject to interference exists; (2) that the alleged interference was willful and intentional; (3) that the willful and intentional act proximately caused damage; and (d) that actual damage or loss occurred. *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997).

The factors do not overwhelmingly way in favor of abstention. Under the facts at hand, the Court could decide either way and find support for its decision. After considering the foregoing, along with the present status of the case—a Chapter 7 proceeding with little, if anything, to disburse to unsecured creditors, the Court determines that the factors weigh in favor of not abstaining at this time. So long as the Chapter 7 Trustee is a party to this litigation, it makes more sense for the litigation to be handled in the bankruptcy court.

### III. CONCLUSION

Whether or not the TPUC would have primary jurisdiction does not strip the Court from hearing this matter under 28 U.S.C. § 1334. As the proceeding is core, or at least "related to" the bankruptcy case, this Court has jurisdiction to hear this matter, and will, in its discretion do so.

###End of Opinion###